IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SUWANDA EVETTE HUMPHREYS,      )
                               )
         Plaintiff,            )
                               )
    v.                         )          1:21-cv-432
                               )
ROWAN-SALISBURY BOARD OF       )
EDUCATION and DEPUTY TOMMY     )
CATO,                          )
                               )
         Defendants.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court are three cross-motions for summary
judgment filed by the three parties to this case. Defendants
Deputy Tommie Cato and Rowan-Salisbury Board of Education
("RSBE") each seek summary judgment in their favor on all counts
against them. (Docs. 28, 34.) Plaintiff, Suwanda Evette
Humphreys, seeks partial summary judgment. (See Doc. 30

This court will grant Defendant Tommie Cato's Motion for
Summary Judgment, (Doc. 28), and Defendant Rowan-Salisbury Board
of Education's Motion for Summary Judgment, (Doc. 34), thereby
dismissing these Defendants from this action. This court will
deny Plaintiff's Motion for Partial Summary Judgment. (Doc. 30.)

# I. __FACTUAL BACKGROUND__

The majority of the facts in this case are uncontested. Because this court will address Defendants' motions for summary judgment first, the evidence is presented here in the light most favorable to Plaintiff, the non-moving party.

Plaintiff's claims arise out of an incident at East Rowan High School on March 28, 2018. (See Pl.'s First Am. Compl. ("FAC") (Doc. 11) ¶ 5.)[1] Sometime prior to the incident, Cato — East Rowan's School Resource Officer (SRO) — school administrators, and the Rowan County Sheriff's Office had agreed to conduct canine sniffs at the school using a drug dog. (Dep. of Tommie Cato ("Cato Dep.") (Doc. 29-2) at 54-56.)

Sergeant Wes Smith of the Rowan Sheriff's Office reported to the school on the morning of March 28, 2018 with his K-9, Kilo. (Dep. of Sgt. Wes Smith ("Smith Dep.") (Doc. 29-3) at 32.) At the time, Kilo was a thirteen-year-old chocolate labrador who had been working with Smith since January 2009. (Id. at 8-9.) Kilo was certified through the International Police Work Dog Association (IPWDA), underwent yearly recertifications, and received maintenance training twice a month. (Id. at 12-13, 15.)

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 2 -

Kilo was trained to detect the odors of marijuana, cocaine, methamphetamine, and heroin; he would alert his handler when he detected these odors. (Id. at 13-14.)

Smith used Kilo to conduct random sniffs of a row of cars in the East Rowan parking lot. (Id. at 51-52; Cato Dep. (Doc. 29-2) at 93.) After sniffing eight to ten cars, Kilo alerted his handler to a vehicle. (Cato Dep. (Doc. 29-2) at 93-94; Smith Dep. (Doc. 29-3) at 51.) Students at East Rowan have assigned parking spaces, and Cato has a list identifying the student assigned to each spot. (Cato Dep. (Doc. 29-2) at 37-39.) Cato referenced this list and determined that the car Kilo alerted Smith to was driven by Unique Humphreys, (id. at 93-94), an eighteen-year-old senior at East Rowan, (Dep. of Pl. Suwanda Evette Humphreys ("Humphreys Dep.") (Doc. 29-1) at 13, 91).

Unique was called to the parking lot and Cato informed her that a dog had alerted on her car. (Cato Dep. (Doc. 29-2) at 48.) Unique initially refused to allow them to search her car and called Plaintiff, her mother. (Cato Dep. (Doc. 29-2) at 48-49; Humphreys Dep. (Doc. 29-1) at 17.) Plaintiff subsequently arrived at the school and met her daughter in the parking lot. (Humphreys Dep. (Doc. 29-1) at 21.) Plaintiff and Unique refused to give permission to search the car. (Id. at 22.)

- 3 -

After her arrival at the school, Plaintiff was, according to her counsel, "loud, impolite and used profanity." (Pl.'s Mem. in Opp'n to Def. Cato's Mot. Summ. J. ("Pl.'s Resp. Cato MSJ") (Doc. 40) at 3.) Plaintiff insisted that the officers needed a warrant to search her daughter's car. (See Ex. F, Notice of Lodging Video Evid. with Ct. in Supp. of Pl.'s. Mot. for Partial Summ. J. ("Video") (Doc. 31-6).) Officers informed Plaintiff and Unique that they would tow the car to a secure location until a warrant could be issued; Plaintiff then consented to the search. (See FAC (Doc. 11) ¶ 43; Cato Dep. (Doc. 29-2) at 49-50; Humphreys Dep. (Doc. 29-1) at 23.)[2]

Neither Unique nor Plaintiff were frisked prior to the search of the vehicle. (Humphreys Dep. (Doc. 29-1) at 25; Cato Dep. (Doc. 29-2) at 77-78.) Smith searched the interior of Unique's car by hand while Cato looked on. (See Smith Dep. (Doc. 29-3) at 37-38; Cato Dep. (Doc. 29-2) at 50.) Cato stated

_____

[2] Plaintiff's deposition testimony was that she did not recall whether she gave consent to search the car. (Humphreys Dep. (Doc. 29-1) at 23.) This somewhat contradicts the statement in her amended complaint that "she consented to the search." (See FAC (Doc. 11) ¶ 43.) However, "[f]actual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 470 n.6 (2013). Therefore, this court finds that Plaintiff is bound by the factual allegations in her amended complaint, even where they are contradicted by her deposition testimony.

- 4 -

during his deposition that he believed his responsibility was to ensure Smith's safety while Smith carried out the search. (Cato Dep. (Doc. 29-2) at 50.) During the search, Plaintiff "repeatedly looked over Sergeant Smith's shoulder while he was attempting to search the car. Deputy Cato and Sergeant Smith repeatedly asked Plaintiff to back up or back away from Sergeant Smith." (FAC (Doc. 11) ¶ 46.) Plaintiff refused to comply with these requests. (Id. ¶ 47.) Plaintiff also told a group of students walking to class through the parking lot that they were "about to see a black woman — an unarmed black woman get shot." (Id.)

Smith moved around the vehicle to continue the search and Plaintiff moved from the back of the car, where she had been standing with Unique and Cato, to the front to continue observing Smith. (See FAC (Doc. 11) ¶¶ 48-49.) Cato asked Plaintiff "to 'come on back' to where he was because 'he needed to keep an eye on her.'" (Id. ¶ 49.) Plaintiff walked out of Cato's view for approximately three seconds and then returned to his line of sight. (Id. ¶ 50.) Plaintiff refused to return to the back of the car and told Cato, "you can keep an eye on me from right here." (Id.) Cato again asked Plaintiff to "come on back over here." (Id. ¶ 51.) Plaintiff again told Cato that "you can keep an eye on me from right here." (Id.) Plaintiff also

directed her daughter to record Cato because he "could see her, she was not in [Smith's] way[,] and she was not bothering nobody[,] and she was not moving." (Id.) Finally, Cato asked, "are you refusing to come back here?" (Id. ¶ 52.) Plaintiff responded that she was "breaking no law," and Cato replied, "you're under arrest." (Id.)[3]

Plaintiff was charged with disorderly conduct in violation of N.C. Gen. Stat. § 14-288.4(a) and resisting a public officer in violation of N.C. Gen. Stat. § 14-223. (Id.) Cato handcuffed Plaintiff's hands in front of her body, and she watched the remainder of the search of Unique's vehicle. (Video (Doc. 31-6); see also Humphreys Dep. (Doc. 29-1) at 40.) Plaintiff does not allege that force was used in her arrest other than the force necessary to handcuff her. (See Humphreys Dep. (Doc. 29-1) at 41, 92 (agreeing Plaintiff was not hit or thrown during her arrest and that she suffered no physical injuries from her arrest).) Furthermore, in the video Plaintiff has filed, it appears that the only force used against Plaintiff was the application of handcuffs. (See Video (Doc. 31-6).)

---

[3] Cato and Plaintiff's interactions were also captured on a video filed with this court. (Video (Doc. 31-6).)

No drugs were found in Smith's search of Unique's car. (FAC (Doc. 11) ¶ 57.) However, a knife that belonged to Plaintiff was discovered. (Humphreys Dep. (Doc. 29-1) at 43.)

Plaintiff was found guilty of disorderly conduct and resisting a public officer in a bench trial. (FAC (Doc. 11) ¶ 72.) She appealed to the Rowan County Superior Court, and a jury found her guilty of disorderly conduct and resisting a public officer. (Id. ¶¶ 73, 75-76.) Plaintiff appealed her convictions to the North Carolina Court of Appeals. That court held that "the trial court erred in denying the motion[s] to dismiss the disorderly conduct charge [and the resisting a public officer charge] because there was not substantial evidence to support Defendant's violation[s]" of those statutes. State v. Humphreys, 275 N.C. App. 788, 800, 853 S.E.2d 789, 797 (2020). The opinion does not discuss probable cause. See id. Additional facts will be addressed hereafter as necessary.

## II.  **PROCEDURAL HISTORY**

Plaintiff originally filed her complaint in North Carolina state court on April 19, 2021. (Doc. 1-1.) Defendants timely removed the case to federal court. (See Doc. 1.) Plaintiff subsequently filed an amended complaint, (FAC (Doc. 11)), which Defendants answered, (Docs. 12, 16).

After discovery concluded, Cato filed a Motion for Summary Judgment, (Doc. 28), and a brief in support, (Br. in Supp. of Mot. for Summ. J. on Behalf of Def. Deputy Tommie Cato ("Cato MSJ Br.") (Doc. 29)). Plaintiff responded, (Pl.'s Resp. Cato MSJ (Doc. 40)), and Cato replied, (Reply Br. in Supp. of Mot. for Summ. J. on Behalf of Def. Deputy Tommie Cato ("Cato MSJ Reply") (Doc. 43)).

Defendant RSBE also filed a Motion for Summary Judgment, (Doc. 34), and a brief in support, (Def. RSBE's Mem. of Law in Supp. of Mot. for Summ. J ("RSBE MSJ Br.") (Doc. 35)). Plaintiff responded, (Pl.'s Mem. in Opp'n to Def. RSBE's Mot. for Summ. J. ("Pl.'s Resp. RSBE MSJ") (Doc. 42)), and RSBE replied, (Def. RSBE's Reply to Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("RSBE MSJ Reply") (Doc. 44)).

Plaintiff also filed a Notice of Motion stating she would move for summary judgment, (Doc. 30),[4] and a brief in support of partial summary judgment, (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s MSJ Br.") (Doc. 31)). Defendants Cato and RSBE

---

[4] This court notes that Plaintiff failed to file a motion for summary judgment in this case. Her motion states she "will move . . . for an Order pursuant to Fed. Civ. R. 56 granting Plaintiff's motion for partial summary judgment." (Doc. 30 at 1.) However, she failed to file such a motion with this court. Plaintiff's procedural failure has not impacted this court's consideration of her request.

responded separately. (Docs. 36, 39.) Plaintiff replied to each response. (Docs. 37, 45.)

Plaintiff alleges one claim against Cato under 42 U.S.C. § 1983 for a violation of her Fourth Amendment rights. (FAC (Doc. 11) at 16–20.) Plaintiff asserts three claims against RSBE: (1) a Monell claim under 42 U.S.C. § 1983, (2) a discrimination claim under Title VI, and (3) a claim for negligent retention and supervision under North Carolina law. (Id. at 20–23.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. If the "moving party discharges its burden . . ., the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th

- 9 -

Cir. 2003) (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986)). Summary judgment should be granted "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." <u>McLean</u>, 332 F.3d at 719 (citing <u>Liberty Lobby</u>, 477 U.S. at 247–48).

When facing cross-motions for summary judgment, this court reviews "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003) (citation and internal quotation marks omitted). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." <u>Id.</u> (citation and internal quotation marks omitted).

## IV.  <u>ANALYSIS</u>

### A.   <u>Cato's Motion for Summary Judgment</u>

Plaintiff has asserted a claim against Cato for an alleged violation of her Fourth Amendment rights under 42 U.S.C. § 1983. (FAC (Doc. 11) at 16–20.) Though Plaintiff's amended complaint fails to clearly specify the legal theories she relies on to claim her rights were violated, this court interprets her

amended complaint as alleging claims of false arrest, malicious prosecution, and excessive force.[5]

Cato argues he is entitled to summary judgment because he did not violate Plaintiff's constitutional rights, and any constitutional right that was violated was not clearly established at the time of the violation. (Cato MSJ Br. (Doc. 29) at 8–23.) Plaintiff disagrees and contends that: (1) Cato acted as an agent of RSBE and thus had no authority to arrest her, (Pl.'s Resp. Cato MSJ (Doc. 40) at 4–10), (2) Cato lacked probable cause to arrest her, (id. at 13–17), (3) the use of handcuffs during her arrest qualified as excessive force, (id. at 17–18), and (4) Cato is not entitled to qualified immunity, (id. at 19–23).[6]

---

[5] Plaintiff "asserts no claim against Defendant Cato for the search of [her daughter's] vehicle." (Pl.'s Resp. Cato MSJ (Doc. 40) at 4.) Therefore, this court will not address whether Plaintiff's Fourth Amendment rights were violated by Smith's search of Unique's car.

[6] Plaintiff also appears to assert official capacity claims against Cato in her amended complaint. (See FAC (Doc. 11) at 4–5.) These fail because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Thus, an official capacity suit should be against the Office of the Sheriff, which Plaintiff has not named as a defendant, not Cato.

1. **Plaintiff's false arrest and malicious prosecution claims fail because Cato had probable cause to arrest Plaintiff**

To prevail on a § 1983 claim, Plaintiff must show that she was deprived of a federal statutory or constitutional right and that "deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

Plaintiff claims Cato violated her Fourth Amendment rights. The Fourth Amendment protects the right "to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV.

> Whether [an] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Virginia v. Moore, 553 U.S. 164, 171 (2008) ("[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable.").

The default rule is that probable cause establishes constitutionality; the Supreme Court has recognized exceptions only when "searches or seizures [are] conducted in an

extraordinary manner, unusually harmful to an individual's privacy or even physical interests." Whren v. United States, 517 U.S. 806, 818 (1996). The Supreme Court has not, however, held that allegations of assault or excessive force alone abrogate the default probable-cause rule.

False arrest is an "illegal restraint of the person of any one against his will." Fowler v. Valencourt, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993). "Probable cause is an absolute bar to a claim for false arrest." Williams v. City of Jacksonville Police Dep't, 165 N.C. App. 587, 596, 599 S.E.2d 422, 430 (2004). Similarly, a claim for malicious prosecution requires a showing "that the defendant (1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." Turner v. Thomas, 369 N.C. 419, 425, 794 S.E.2d 439, 444 (2016) (emphasis added). Thus, a showing that an arrest was made with probable cause will defeat a false arrest or malicious prosecution claim arising from that arrest.

In Allen v. McCurry, 449 U.S. 90 (1980), the Supreme Court "concluded that the doctrine of collateral estoppel . . . applies to § 1983 suits against police officers to recover for Fourth Amendment violations." Haring v. Prosise, 462 U.S. 306, 313 (1983). The Court determined that "Congress has specifically

- 13 -

required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." <u>Allen</u>, 449 U.S. at 96. "The question here, then, is whether, if the instant § 1983 action were pending in a North Carolina state court, the North Carolina courts would give the earlier state court judgment" preclusive effect. <u>Davenport v. North Carolina Dep't of Transp.</u>, 3 F.3d 89, 92 (4th Cir. 1993); <u>see also</u> <u>Hamstead v. Walker</u>, No. 20-1650, 2022 WL 5133569, at *3 (4th Cir. Oct. 5, 2022) (affirming dismissal of the plaintiff's § 1983 retaliatory arrest claim because, under West Virginia law, the plaintiff's prior "nolo contendere plea precludes a civil rights plaintiff from arguing her arrest was not supported by probable cause").

Under North Carolina law, a conviction by a court of competent jurisdiction establishes the existence of probable cause, even if that conviction is later overturned. <u>See</u> <u>Griffis v. Sellars</u>, 20 N.C. 315, 177 (1838) ("[P]robable cause is judicially ascertained by the verdict of the jury and judgment of the Court thereon, although upon an appeal, a contrary verdict and judgment be given in a higher Court."); <u>Smith v. Thomas</u>, 149 N.C. 100, 62 S.E. 772, 773 (1908) ("[A] conviction of the defendant in the criminal prosecution by a court of competent jurisdiction is conclusive in an action by him for

- 14 -

malicious prosecution upon the question of probable cause."); Overton v. Combs, 182 N.C. 4, 108 S.E. 357, 358 (1921) ("[W]here in a former suit a trial court having jurisdiction has decided the essential issues in favor of the plaintiff on proper proof or admission, that finding is conclusive in plaintiff's favor on this question of probable cause. . . ."). This finding of probable cause "can only be rebutted by evidence that the conviction was procured by fraud or other unfair means." Hill v. Winn-Dixie Charlotte, Inc., 100 N.C. App. 518, 521, 397 S.E.2d 347, 349 (1990).

Plaintiff argues the above-stated rule that a prior conviction conclusively establishes probable cause "is not still good law" in North Carolina. (Pl.'s Resp. Cato MSJ (Doc. 40) at 10.) However, Plaintiff's own citation to Myrick v. Cooley, 91 N.C. App. 209, 371 S.E.2d 492 (1988), in support of this contention undercuts her argument. (See Pl.'s Resp. Cato MSJ (Doc. 40) at 11.) In Myrick, the North Carolina Court of Appeals expressed "doubts about the wisdom of the rule" that "a District Court judgment which is subsequently overturned upon a trial de novo in Superior Court . . . insulate[s] the arresting officer from liability." Myrick, 91 N.C. App. at 213, 371 S.E.2d at 495. However, those "doubts" did not carry the day because the court went on to decide that it was "compelled by the established

- 15 -

precedent to conclude that . . . the [plaintiff's] conviction establishes, as a matter of law, the existence of probable cause for his arrest . . . ." Id. Having located no case in North Carolina overruling this precedent, this court finds it remains good law.

Here, Cato arrested Plaintiff and she was charged with disorderly conduct in violation of N.C. Gen. Stat. § 14-288.4(a) and resisting a public officer in violation of N.C. Gen. Stat. § 14-223. (See FAC (Doc. 11) ¶ 52.) Plaintiff was found guilty on both counts in a bench trial. (Id. ¶ 72.) In a subsequent jury trial, she was again found guilty on both counts. (Id. ¶ 76.) Plaintiff appealed her convictions to the North Carolina Court of Appeals, which reversed the lower court, finding there was not substantial evidence to support either of Plaintiff's convictions. See Humphreys, 275 N.C. App. at 800, 853 S.E.2d at 797. The North Carolina Court of Appeals did not address whether Cato had probable cause to arrest Plaintiff. See id.

"A federal court sitting in diversity has an obligation to apply the law of the forum state as it is interpreted by the state's highest court." Adamson v. Columbia Gas Transmission, LLC, 579 F. App'x 175, 177 (4th Cir. 2014) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938)). Here, the North Carolina

state court precedent is clear, and this court is bound to adhere to it.

Under North Carolina law, Plaintiff's two prior convictions for violations of N.C. Gen. Stat. §§ 14-288.4(a) and 14-233 establish that Cato had probable cause to arrest Plaintiff for these offenses, notwithstanding the fact that her convictions were reversed on appeal. Plaintiff argues this court should reach the opposite conclusion for several reasons.

First, Plaintiff argues that her convictions were "wrongfully procured." (Pl.'s Resp. Cato MSJ (Doc. 40) at 11.) While Plaintiff is correct that a prior conviction does not conclusively establish probable cause where the "conviction was procured by fraud or other unfair means," Hill, 100 N.C. App. at 521, 397 S.E.2d at 349, there is no evidence fraud or unfairness tainted Plaintiff's convictions.

In Hill, the North Carolina Court of Appeals noted that a conviction would be considered unfair where the plaintiff was "convicted by perjured testimony that was procured by threats, intimidation and promises of reward." 100 N.C. App. at 521, 397 S.E.2d at 350. Likewise, an allegation that a written confession introduced in the plaintiff's initial trial was "false, fictitious, fabricated, and fraudulent" "clearly alleged that the verdict against [the plaintiff] in district court was

- 17 -

procured 'fraudulently or unfairly.'" Simpson v. Sears, Roebuck & Co., 231 N.C. App. 412, 416, 752 S.E.2d 508, 510 (2013). In contrast, an initial conviction that is subsequently overturned does not show an absence of probable cause for the arrest or that the conviction was the result of fraud or unfairness. See Hill, 100 N.C. App. at 521, 397 S.E.2d at 350.

Here, Plaintiff contends her conviction was unfair because Cato was mistaken about the law. (Pl.'s Resp. Cato MSJ (Doc. 40) at 11-12.) The basis for her opinion that Cato wrongfully arrested her is the North Carolina Court of Appeals' decision overturning her convictions. (See id.) Even assuming that Cato was incorrect about the law, an officer's misunderstanding of the law does not render a resulting conviction fraudulent. The judge in Plaintiff's bench trial was responsible for "consider[ing] and weigh[ing] all the competent evidence before him." Matter of Est. of Trogdon, 330 N.C. 143, 148, 409 S.E.2d 897, 900 (1991) (emphasis omitted). Later, the judge in Plaintiff's jury trial "was required to consider the evidence" and determine if there was "substantial evidence (1) of each essential element of the offense charged and (2) that [the] defendant is the perpetrator of the offense." State v. Glasco, 160 N.C. App. 150, 156, 585 S.E.2d 257, 262 (2003). Cato's alleged misunderstanding of the law had no bearing on the two

- 18 -

trial judges' evaluations of whether Plaintiff violated the law. Therefore, this court is unpersuaded by Plaintiff's argument that her conviction was obtained by "fraud or unfair means." See Hill, 100 N.C. App. at 522, 397 S.E.2d at 350.

Second, Plaintiff argues that the Eastern District of North Carolina considered "a similar situation" in Tarlton v. Sealey, No. 5:15-CV-451-BO, 2018 WL 1129976, at *5 (E.D.N.C. Mar. 1, 2018), aff'd sub nom. Gilliam v. Sealey, 932 F.3d 216 (4th Cir. 2019), and determined that "the plaintiffs could pursue a claim when their convictions and sentences were vacated by the North Carolina Superior Court." (Pl.'s Resp. Cato MSJ (Doc. 40) at 12.)

This court disagrees with Plaintiff's reading of Tarlton. There, the court acknowledged that, under North Carolina law, "a prior conviction, even if reversed on appeal, is conclusive evidence of probable cause for the arrest." Tarlton, 2018 WL 1129976, at *5. The court noted that the plaintiff's convictions had been vacated, rather than reversed by the superior court, but went on to reason that of "critical importance in this case is that [the plaintiff's] convictions were not merely overturned or vacated based on a legal error; instead, both men ha[d] been granted full pardons of innocence by the Governor of North Carolina." Id. at *6. This court finds that Tarlton is

- 19 -

distinguishable from the case at bar where Plaintiff did not receive a pardon from the Governor.

Plaintiff's convictions in the bench trial and jury trial establish that Cato had probable cause to arrest Plaintiff. A required element of false arrest and malicious prosecution is that the arrest was made without probable cause. As Cato acted with probable cause, these claims fail.

## 2. <u>Plaintiff's excessive force claim fails because Cato used reasonable force</u>

The use of excessive force during an arrest violates the Fourth Amendment only when it is not objectively reasonable. <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989). In other words, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Id.</u> "Under the common law, a law enforcement officer has the right, in making an arrest and securing control of an offender, to use only such force as may be reasonably necessary to overcome any resistance and properly discharge his duties." <u>Myrick</u>, 91 N.C. App. at 215, 371 S.E.2d at 496 (citing <u>State v. Fain</u>, 229 N.C. 644, 50 S.E.2d 904 (1948)). Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

- 20 -

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396. "[A] standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified . . . in effecting the underlying arrest." <u>Brown v. Gilmore</u>, 278 F.3d 362, 369 (4th Cir. 2002).

Here, Cato had probable cause to suspect that Plaintiff violated two North Carolina statutes. (See <u>supra</u> Section IV.A.1.) This provided him with legal justification to arrest Plaintiff. Therefore, he was permitted to place her in handcuffs — "a standard procedure." <u>See</u> <u>Brown</u>, 278 F.3d at 369. Plaintiff does not allege that any additional force was used other than what was necessary to place her in handcuffs. Therefore, this court finds that in the circumstances present here, placing Plaintiff in handcuffs was reasonably necessary to accomplish the arrest and did not constitute excessive force.

### 3. <u>Plaintiff's argument about Cato and RSBE's relationship also fails</u>

Plaintiff's response makes an additional, somewhat unclear, argument for denying Cato's motion for summary judgment. (Pl.'s Resp. Cato MSJ (Doc. 40) at 4-10.) The gravamen of her claim appears to be that Plaintiff was justifiably confused about whether Cato was acting as a representative of RSBE or the

Sheriff's Office during the search and that Cato, as a representative of RSBE, lacked authority to arrest Plaintiff. (Id.)

This court first notes that Plaintiff fails to cite any legal authority in support of her argument. (See id.) Second, Plaintiff's argument is defeated by her own admission that "[a]s a sworn law enforcement officer, Defendant Cato has the authority to make an arrest." (Id. at 8.) That conclusion is not undermined merely because Cato was assigned to work in a school or because Plaintiff may have been confused about Cato's role and powers during the arrest. Therefore, this court does not find Plaintiff's argument on this point persuasive.

Since Cato had probable cause to arrest Plaintiff, her claims for malicious prosecution and false arrest must fail. Furthermore, as Cato used only reasonable force in arresting Plaintiff, her claims for excessive force likewise fail. Thus, this court will grant Cato's motion for summary judgment.

### B.  RSBE's Motion for Summary Judgment

Defendant RSBE seeks dismissal of Plaintiff's three claims against it. Plaintiff's claims are: (1) a Monell claim under 42 U.S.C. § 1983, (2) a Title VI claim for racial discrimination, and (3) a claim for negligent retention and supervision. (See

FAC (Doc. 11) at 20-23.) This court finds that these three claims fail.

### 1. **Plaintiff's Monell claim fails because her constitutional rights were not violated**

Plaintiff argues RSBE is not entitled to summary judgment on her Monell claim because two school policies led to the violation of Plaintiff's Fourth Amendment rights. (Pl.'s Resp. RSBE MSJ (Doc. 42) at 5-8.) Without reaching the issue of whether RSBE had a policy or custom in place, this court finds Plaintiff's Monell claim fails because her constitutional rights were not violated during her arrest.

Municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts caused by the municipality. City of Canton v. Harris, 489 U.S. 378, 385 (1989). However, a municipality cannot be held responsible for the conduct of its officers on a theory of respondeat superior. Monell, 436 U.S. at 691-95. It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." City of Canton, 489 U.S. at 385 (cleaned up). School boards are considered municipalities for purposes of § 1983 claims. Monell, 436 U.S. at 696.

To prove municipal liability, a plaintiff must plausibly allege "(1) that the defendants acted under color of state law

- 23 -

and (2) that the plaintiff suffered a deprivation of a constitutional right as a result of that action." Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth., 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004) (citing Gomez v. Toledo, 446 U.S. 635 (1980)). The first element — "that the defendants acted under color of state law" requires a plaintiff to plausibly allege that an official policy or custom led to the alleged deprivation of a constitutional right. Id. A custom, policy, or practice can be shown in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (cleaned up).

Here, because Plaintiff's constitutional rights have not been violated, her Monell claim against RSBE fails as a matter of law. "Plaintiff bases her Monell claim on the violation of her Fourth Amendment rights to be free from unreasonable search and seizure." (Pl.'s Resp. RSBE MSJ (Doc. 42) at 7.) This court has concluded that Plaintiff's Fourth Amendment rights were not violated during her arrest. Therefore, this court will grant RSBE's motion for summary judgment as to Plaintiff's Monell claim.

- 24 -

## 2. <u>Plaintiff lacks standing to bring a Title VI claim</u>

RSBE contends Plaintiff's Title VI claim is legally deficient because she lacks standing and Plaintiff has failed to provide evidence showing she was the victim of intentional racial discrimination.[7] (<u>See</u> RSBE MSJ Br. (Doc. 35) at 12-15.) Plaintiff contends that she has standing because she was an intended beneficiary of East Rowan High School. (<u>See</u> Pl.'s Resp. RSBE MSJ (Doc. 42) at 9-10.) She claims to have acquired intended beneficiary status because her daughter invited her to the school. (<u>Id.</u>) Plaintiff also argues she was the victim of racial discrimination because she believes race played a role in her arrest and because Black students in the school system were disproportionately impacted by school punishments. (<u>See</u> <u>id.</u> at 10-11.) This court agrees with RSBE that Plaintiff lacks standing to bring a Title VI claim and has not proffered evidence that she was the victim of intentional racial discrimination.

The party seeking to invoke the federal courts' jurisdiction has the burden of satisfying Article III's standing

---

[7] RSBE also contends that Cato was not an employee or agent of the Board; therefore, the Board cannot be liable for any alleged discrimination he committed. (RSBE MSJ Reply (Doc. 44) at 7-8.) This court does not reach this issue and assumes without deciding that RSBE could be liable for Cato's actions.

requirement. Miller v. Brown, 462 F.3d, 312, 316 (4th Cir.
2006). To meet that burden, a plaintiff must demonstrate three
elements: (1) that the plaintiff has suffered an injury in fact
that is "concrete and particularized" and "actual or imminent";
(2) that the injury is fairly traceable to the challenged
conduct of the defendant; and (3) that a favorable decision is
likely to redress the injury. Lujan v. Defs. of Wildlife, 504
U.S. 555, 560-61 (1992).

Title VI declares that: "[n]o person in the United States
shall, on the ground of race, color, or national origin, be
excluded from participation in, be denied the benefits of, or be
subjected to discrimination under any program or activity
receiving Federal financial assistance." 42 U.S.C. § 2000d. The
goals of Title VI are "to avoid the use of federal funds to
support discriminatory practices" and "to provide individual
citizens with effective protection against those practices."
Bogdan v. Hous. Auth. of the City of Winston-Salem, No.
1:05CV00568, 2006 WL 3848693, at *4 (M.D.N.C. Dec. 29, 2006)
(cleaned up). The terms "program or activity" and "program" in
the statute encompass "a local educational agency . . . or other
school system." 42 U.S.C. § 2000d-4a(2)(B). "Title VI
essentially creates a contract between the Government and
recipient of the funds, 'conditioning an offer of federal

- 26 -

funding on a promise by the recipient not to discriminate.'" Bogdan, 2006 WL 3848693, at *4 (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998)). Remedial action under the statute is limited to instances of intentional discrimination, not disparate impact claims. Alexander v. Sandoval, 532 U.S. 275, 280 (2001).

For a plaintiff to assert a claim under Title VI, there must "be a 'logical nexus' between the alleged discriminatory practices . . . and the use of federal funds . . . ." Rogers v. Bd. of Educ. of Prince George's Cnty., 859 F. Supp. 2d 742, 747 (D. Md. 2012). To establish a logical nexus, the plaintiff must be "either an intended beneficiary, an applicant, or a participant" in the federally funded program. Bogdan, 2006 WL 3848693, at *6.

RSBE does not dispute that it received federal funding and therefore is required to comply with Title VI. (See RSBE MSJ Br. (Doc. 35) at 13.) Instead, it argues that Plaintiff lacks standing to bring a Title VI claim because she is not an intended beneficiary of the school. (Id. at 13-14.) This court agrees.

While this court was unable to locate Fourth Circuit cases addressing whether a parent is an intended beneficiary of their child's school, numerous courts in other circuits agree that

- 27 -

"[t]he intended beneficiaries of a federally funded public school program are school children, not their parents." Jackson v. Katy Indep. Sch. Dist., 951 F. Supp. 1293, 1298 (S.D. Tex. 1996); accord I.G. by & through Grunspan v. Jefferson Cnty. Sch. Dist. through Bd. of Educ. for Jefferson Cnty. Sch. Dist., 452 F. Supp. 3d 989, 998 (D. Colo. 2020) ("Courts have consistently held parents are not the intended beneficiaries of school programs and, therefore, may not assert Title VI claims on their own behalf."); Verrett v. Indep. Sch. Dist. #625, No. CV 18-2513(DSD/BRT), 2019 WL 2870076, at *6 (D. Minn. July 3, 2019) ("Courts have routinely denied standing under the theories of relief raised here based solely on parental status."); Murray v. Lakeland Cent. Sch. Dist. Bd. of Educ., No. 16-CV-6795 (KMK), 2017 WL 4286658, at *8 (S.D.N.Y. Sept. 26, 2017) (holding that a mother of a schoolchild "cannot maintain a Title VI claim against the Lakeland Defendants because she is not the intended beneficiary of th[e] federally funded school program."); Franklin v. Mansfield City Sch. Dist., No. 1:14CV1163, 2015 WL 7429046, at *10 n.119 (N.D. Ohio Oct. 30, 2015) ("Franklin, as Brown's mother, has no standing herself to bring an action under Title VI, but may do so on behalf of her minor son.") report and recommendation adopted, No. 1:14CV1163, 2015 WL 7430053 (N.D. Ohio Nov. 18, 2015); Price v. Louisiana Dep't of Educ., No. CV

- 28 -

08-462 JJB, 2009 WL 10709923, at *3 (M.D. La. Jan. 6, 2009)

(holding an uncle lacked standing to sue his nephew's school for

alleged discrimination against the uncle) aff'd sub nom. Price

v. Louisiana Dep't of Educ., 329 F. App'x 559 (5th Cir. 2009);

R.W. ex rel. Williams v. Delaware Dep't of Educ., No. CIV.A.05-

662-GMS/MPT, 2008 WL 4330461, at *3 (D. Del. Sept. 22, 2008)

("[A child], and not [their parent], is the intended beneficiary

of the public school program, and thus, [a parent] lacks

standing to state a claim in her own right pursuant to Title

VI.") report and recommendation adopted, No. CIVA 05-662 GMS-

MPT, 2008 WL 4547192 (D. Del. Oct. 9, 2008); Johnson v. Dodson

Pub. Sch., No. CV-05-39-GF-CSO, 2006 WL 8435827, at *4 (D. Mont.

May 4, 2006) (finding that the plaintiff, a grandmother and

custodian of a child, was "not an intended beneficiary, nor a

participant in the school"); Doe v. Woodridge Elementary Sch.

Dist. No. 68 Bd. of Educ., No. 04 C 8250, 2005 WL 910732, at *2

(N.D. Ill. Apr. 13, 2005) ("[A parent] personally lacks standing

to assert a claim for damages against the [d]efendants, but may

bring an action on behalf of her minor son, who, as an intended

beneficiary of the school, has standing to assert a claim for

discrimination under Title VI.") As Plaintiff brings her Title

VI claim on her own behalf, and not on behalf of a minor child

- 29 -

who was an intended beneficiary of the school, (see generally
FAC (Doc. 11)), she lacks standing.

Plaintiff argues that because her daughter invited her to
the school, she became an intended beneficiary of the school.
(See Pl.'s Resp. RSBE MSJ (Doc. 42) at 9-10.) Plaintiff does not
cite any legal authority supporting this contention. (See id.)
This court does not agree that a student can transform another
individual into an intended beneficiary of a federally funded
program merely by inviting them onto a school's campus.
Moreover, this court is guided by the findings of other district
courts that parents are not the intended beneficiaries of their
children's schools. See, e.g., Jackson, 951 F. Supp. at 1298.
Thus, this court finds that Plaintiff's novel and unsupported
argument is insufficient to meet her "burden of establishing
standing." Miller, 462 F.3d at 316.

RSBE next contends that there is no evidence from which a
jury could infer that RSBE discriminated against Plaintiff based
on her race. (RSBE MSJ Br. (Doc. 35) at 7-8.) Plaintiff disputes
this and believes "her race played a role . . . in her arrest."
(Pl.'s Resp. RSBE MSJ (Doc. 42) at 10—11.) Plaintiff cites
deposition testimony from the Superintendent of the Rowan County
School System, Dr. Lynn Moody, that "black students were . . .
disproportionately impacted by school punishments." (Id. at 10.)

- 30 -

This court finds that Plaintiff's evidence is insufficient to make out a claim under Title VI against RSBE. First, where a plaintiff "has failed, after having been afforded full discovery, to produce any evidence of . . . discrimination, [her] own naked opinion, without more, is not enough to establish a prima facie case of . . . discrimination. Conclusory assertions that [the defendant's] state of mind and motivation are in dispute are not enough to withstand summary judgment." Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988) (citations omitted). Thus, Plaintiff's belief that racial animus motivated her arrest does not create a genuine issue of material fact such that the claim may survive summary judgment.

Second, Plaintiff's other piece of evidence — that Black students were disproportionately impacted by school punishment — has little bearing on the present case for several reasons.

The evidence does not show that the initial search of Unique Humphries' car was the result of racial discrimination. Instead, the evidence is that the car was flagged after a random dog sniff in the student parking lot. (See supra Section I.) Per Cato's uncontradicted deposition testimony, he did not know who the car belonged to when the car was initially flagged, only when he consulted his list that matched students to their

parking spots was the car identified as Unique's. (See Cato Dep. (Doc. 29-2) at 48.)

Additionally, Cato testified he was not involved in enforcing school rules, (see id. at 82-83 ("I never write up any students for any violations. It's only done through the school system.")), and his job description specifically stated he was ordinarily not to be involved in school discipline, (see Agreement for SRO Services (Doc. 35-6) at 2-4 ("The SRO shall refrain from being involved in the enforcement of disciplinary rules that do not constitute violations of the law, except to support staff in maintaining a safe school environment."). Even if disparate treatment of Black students across the district could somehow be attributed to each individual in the district who meted out school discipline, it could not be attributed to Cato since he was not involved in school punishments. Thus, this court has no basis upon which to conclude that Cato had a history of disparate treatment of students based on race, much less that he intentionally discriminated against Plaintiff.

Therefore, RSBE's motion for summary judgment will be granted as to Plaintiff's Title VI claim because Plaintiff lacks standing and has not proffered evidence upon which a jury could conclude that she was the victim of intentional racial discrimination.

### 3. **Plaintiff lacks evidence of negligent hiring**

Finally, RSBE seeks summary judgment on Plaintiff's claim for negligent hiring[8] on the grounds that: (1) Plaintiff failed to allege a waiver of sovereign immunity, (2) Plaintiff failed to proffer evidence that RSBE was on notice that Cato had engaged in wrongful activity, and (3) Cato was not an employee of RSBE. (See RSBE MSJ Br. (Doc. 35) at 15-17.) This court agrees that Plaintiff's amended complaint failed to allege a waiver of sovereign immunity. This court also finds that amending the complaint would be futile since Plaintiff has failed to proffer evidence that RSBE had notice Cato was unfit for the SRO position. As this court will grant RSBE's motion for summary judgment on this basis, this court need not determine whether Cato was an employee or agent of RSBE.

"Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity." Evans v. Hous.

---

[8] Plaintiff's amended complaint says this claim is for "negligent retention and supervision." (See FAC (Doc. 11) at 22.) North Carolina Courts "use the shorthand 'negligent hiring' to refer to the doctrine that includes negligent hiring, retention, and supervision for ease of reading." Keith v. Health-Pro Home Care Servs., Inc., 381 N.C. 442, 445 n.1, 873 S.E.2d 567, 571 n.1 (2022). This court will do the same.
Plaintiff also appears to argue that she asserts a claim for "negligent training" against RSBE. (Pl.'s Resp. RSBE MSJ (Doc. 42) at 13.) This court is unaware of any "negligent training" claim under North Carolina law that is separate from a negligent hiring, retention, and supervision claim.

Auth. of City of Raleigh, 359 N.C. 50, 53, 602 S.E.2d 668, 670
(2004) (quoting Meyer v. Walls, 347 N.C. 97, 104, 489 S.E.2d
880, 884 (1997)). "Governmental immunity is that portion of the
State's sovereign immunity which extends to local governments."
Wray v. City of Greensboro, 370 N.C. 41, 47, 802 S.E.2d 894, 898
(2017). "In order to overcome a defense of governmental
immunity, the complaint must specifically allege a waiver of
governmental immunity. Absent such an allegation, the complaint
fails to state a cause of action." Id. (quoting Fabrikant v.
Currituck Cnty., 174 N.C. App. 30, 38, 621 S.E.2d 19, 25
(2005)). North Carolina courts have "consistently disallowed
claims based on tort against governmental entities when the
complaint failed to allege a waiver of immunity." Paquette v.
Cnty. of Durham, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717
(2002) (collecting cases). "This requirement does not, however,
mandate that a complaint use any particular language. Instead,
consistent with the concept of notice pleading, a complaint need
only allege facts that, if taken as true, are sufficient to
establish a waiver of immunity." Wray, 370 N.C. at 48, 802
S.E.2d at 899 (cleaned up).

Plaintiff argues that three paragraphs in its original
complaint, two of which were replicated in its amended
complaint, "provide a reasonable forecast of waiver." (Pl.'s

Resp. RSBE MSJ (Doc. 42) at 15 (citations omitted).) Plaintiff's counsel is reminded that an amended complaint replaces the original complaint. See Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect.") (citation and internal quotation marks omitted). However, even when considering all three paragraphs, none would have put RSBE on notice that Plaintiff alleged a waiver of sovereign immunity.

Plaintiff directs this court's attention to the following statements:

> 22. To the extent, if at all, the Court finds that Defendants are immune from state law claims, Defendant Cato would then be liable in his official capacity to Plaintiff under Article I, §§ 19 and 20 of the North Carolina State Constitution.

> 23. To the extent, if at all, the Court find that the Defendant the Board (referenced herein as RSBE) is immune from the state law claim of Negligence[sic] Retention and Supervision, Deputy Cato would then be liable in his official capacities to Plaintiff under Article I, § 20 of the North Carolina State Constitution
> . . . .
> 137. To the extent, if at all, the Court finds that Defendant Rowan Salisbury Board of Education is immune from the state law claim of Negligence[sic] Retention and Supervision, Plaintiff will not have an adequate remedy at law against Defendants. Thus, Plaintiff brings this claim, in the alternative, against the Board for their deficient, negligent supervision of Defendant Deputy Cato; their failure to correct and address the repeated unconstitutional, excessive, and unreasonable use of force by Defendant

- 35 -

Deputy Cato; and because this lack of supervision
proximately caused the violation of Plaintiff's
constitutional rights and the injuries described.
Plaintiff may bring that claim of negligent
supervision and retention directly under Article I,
§ 20 in the absence of any state law remedy against
Defendant Cato and Defendant Rowan Salisbury Board of
Education for their violation of Plaintiff's rights.

(Pl.'s Resp. RSBE MSJ (Doc. 42) at 14 (citing Doc. 3 at ¶¶ 22,

23, 137).)

The first two paragraphs recite that if RSBE is immune,

then Plaintiff brings her claims against Cato in his official

capacity. (See id.) These statements do not plead that RSBE

waived sovereign immunity. Instead, they instruct the court on

how it should respond if the court finds that RSBE is in fact

immune from suit. Likewise, the third paragraph informs the

court that if RSBE is immune from Plaintiff's excessive force

claim, then Plaintiff wishes to bring a claim for "negligent

supervision of Defendant Deputy Cato." (Id.) This too does not

plead a waiver of sovereign immunity. Instead, it directs the

court on how to proceed should it find that an excessive force

claim cannot be maintained against RSBE. Thus, while these

paragraphs contemplate that various immunity doctrines exist and

that some of those doctrines may bar some of Plaintiff's claims

against some Defendants, they do not contend that sovereign

immunity had been waived.

- 36 -

In the alternative, Plaintiff "ask[s], on equitable
grounds, to be permitted to make an amendment to her
Compliant[sic] to specifically allege the waiver of governmental
immunity by Defendant RSBE." (Pl.'s Resp. RSBE MSJ (Doc. 42) at
15.) A district court must "freely give leave [to amend] when
justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this
liberal rule, "a district court may deny leave to amend if the
amendment 'would be prejudicial to the opposing party, there has
been bad faith on the part of the moving party, or the amendment
would have been futile.'" United States ex rel. Nathan v. Takeda
Pharm. N. Am., Inc., 707 F.3d 451, 461 (4th Cir. 2013)
(quoting Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en
banc)).

This court finds that amendment would be futile because
Plaintiff has failed to meet one of the elements for a negligent
hiring claim.[9] To make out a claim for negligent hiring under
North Carolina law, the plaintiff must prove:

> (1) the specific negligent act on which the action is
> founded[;] (2) incompetency, by inherent unfitness or
> previous specific acts of negligence, from which
> incompetency may be inferred; and (3) either actual
> notice to the master of such unfitness or bad habits,
> or constructive notice, by showing that the master
> could have known the facts had he used ordinary care
> in oversight and supervision[;] and (4) that the

---

[9] This court also notes that Plaintiff has failed to comply
with Local Rule 7.3, which governs motions practice. See L.R.
7.3(a) ("Each motion shall be set out in a separate pleading.").

> injury complained of resulted from the incompetency
> proved.

Keith, 381 N.C. at 451, 873 S.E.2d at 575 (emphasis added)
(cleaned up).

RSBE contends that Plaintiff has not established the third
element because "Plaintiff is unable to prove the Board knew or
should have known Deputy Cato was engaged in 'police misconduct'
or any other type of wrongful act at issue in this case and
failed to address it." (RSBE MSJ Br. (Doc. 35) at 16.) Plaintiff
does not directly respond to this argument. (See Pl.'s Resp.
RSBE MSJ (Doc. 42) at 11-13.)

This court finds, based on the evidence before it, that
RSBE lacked actual or constructive notice Cato was "unfit" or
had "bad habits" related to his employment as an SRO.

Charles Edwards, the Assistant Principal at East Rowan,
said he was not aware of formal or informal complaints that had
been made against Cato or any complaints by students of unfair
treatment. (See Doc. 31-9 at 6, 23-24, 36.) Likewise,
Superintendent Moody stated in her deposition that she was not
"aware of any complaints or actions brought against" Cato. (See
Doc. 31-2 at 6, 22.) Similarly, Sheriff Kevin Auten said that he
had never disciplined Cato and that the only issue he was aware
of regarding Cato was an operational one in which a computer was
not turned in on time. (See Doc. 31-3 at 29-30.)

- 38 -

Cato provided the most information on his own disciplinary history. He stated he was written up while employed by the State Highway Patrol for car wrecks, crossing the center line in a chase, exceeding a safe speed in a crash, and turning in a voluntary financial pledge a day late. (See Cato Dep. (Doc. 29-2) at 13-15.) He also said that no complaints had been lodged against him for excessive force or racial discrimination. (Id. at 16.)

This court is skeptical that Cato's history shows any "unfitness or bad habits," see Keith, 381 N.C. at 451, 873 S.E.2d at 575, and Plaintiff does not present any argument to the contrary, (see Pl.'s Resp. RSBE MSJ (Doc. 42) at 11-13). Additionally, to the extent bad habits could be inferred from Cato's disciplinary history, they appear largely confined to driving — a task that was not implicated by Cato's regular duties as an SRO. (See Cato Dep. (Doc. 29-2) at 22-23, 28-29 (describing his job duties as, inter alia, handling student parking passes, helping lost students, ensuring doors are locked, monitoring for vaping, checking on teachers, assisting in the office, and issuing referrals for diversion programs)); see also Agreement for SRO Services (Doc. 35-6) at 2-4 (outlining "Duties of the SRO").) Moreover, Cato's driving skills are not implicated by the current case — a parent

- 39 -

arrested during a search of her child's car. Furthermore, as noted above, Plaintiff has not argued that Cato's disciplinary history demonstrates "unfitness or bad habits," see Keith, 381 N.C. at 451, 873 S.E.2d at 575, or that RSBE was or should have been aware of Cato's history, (see Pl.'s Resp. RSBE MSJ (Doc. 42) at 11–13).

Therefore, this court finds that Plaintiff lacks evidence from which a jury could find she met the third element of a prima facie case of negligent hiring. Thus, this court will grant RSBE's motion for summary judgment as to Plaintiff's negligent hiring claim.

## C.  **Plaintiff's Motion for Summary Judgment**

For the reasons previously stated, this court will grant Defendant Cato's motion for summary judgment and RSBE's motion for summary judgment. Both Defendants will be dismissed from this action. Additionally, this court will deny Plaintiff's cross-motion for summary judgment. (Doc. 30.)

On a motion for summary judgment, the court is to resolve all factual disputes in the non-movant's favor. Rossignol, 316 F.3d at 523. Plaintiff seeks summary judgment against Cato for an alleged deprivation of her Fourth Amendment rights. (Pl.'s MSJ Br. (Doc. 31) at 7.) In doing so, she contends she has met the elements for false arrest and malicious prosecution. (Id.

- 40 -

at 7–11.) However, as this court previously noted, Cato had probable cause to arrest Plaintiff. (See supra Section IV.A.1.) Therefore, Plaintiff's claims for false arrest and malicious prosecution fail as a matter of law.

Plaintiff also moves for summary judgment against RSBE on her Monell claim. (See Pl.'s MSJ Br. (Doc. 31) at 11–22.) This argument also fails. This court has already determined that Plaintiff has failed to provide evidence that her constitutional rights were violated during her arrest. (See supra Section IV.B.1.) Therefore, Plaintiff's motion for partial summary judgment, (Doc. 30), will be denied.

## V.    CONCLUSION

This court will grant Cato's motion for summary judgment. (Doc. 28.) This court finds that Cato's motion should be granted because he had probable cause to arrest Plaintiff, so Plaintiff's Section 1983 claims for false arrest and malicious prosecution must fail. Additionally, since Cato had probable cause and used only the force necessary to place Plaintiff in handcuffs, Plaintiff's Section 1983 claim for excessive force fails.

This court will also grant Defendant Rowan-Salisbury Board of Education's Motion for Summary Judgment. (Doc. 34.) Plaintiff's Monell claim fails because she has not proven her constitutional rights were violated, Plaintiff's Title VI claim

- 41 -

fails because she lacks standing, and Plaintiff's negligent hiring claim fails because she failed to come forward with evidence on one of the elements.

Finally, this court will deny Plaintiff's cross-motion for summary judgment, (Doc. 30), because Cato had probable cause to arrest Plaintiff, and she has not demonstrated her constitutional rights were violated.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of the Defendant Deputy Tommie Cato, (Doc. 28), is **GRANTED**. Defendant Tommie Cato is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Defendant Rowan-Salisbury Board of Education's Motion for Summary Judgment, (Doc. 34), is **GRANTED**. Defendant Rowan-Salisbury Board of Education is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment, (Doc. 30), is **DENIED**.

This the 29th day of March, 2023.

_____
United States District Judge

- 42 -